UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| PAMELA DENISE WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-983 (TCB) |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Pamela Denise Williams ("Plaintiff") seeks judicial review of the final decision of Andrew Saul ("Defendant"), Commissioner of Social Security, finding that Plaintiff was not entitled to Supplemental Security Income ("SSI") under Title XVI and Disability Insurance Benefits ("DIB") under Title II. For the reasons set forth below, the undersigned U.S. Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1), will GRANT Defendant's Motion for Summary Judgment and AFFIRM Defendant's final decision.

I. PROCEDURAL AND FACTUAL BACKGROUND

A. Social Security Action

Plaintiff protectively filed her application for SSI and DIB on January 11, 2016, alleging disability beginning on May 9, 2015. (R. at 127-28.) Defendant first denied Plaintiff's claim on June 24, 2016, and then again on reconsideration on November 14, 2016. (R. at 135, 148.)

After Plaintiff's timely request for a hearing in front of an administrative law judge ("ALJ"), ALJ Karen Robinson held a hearing on December 12, 2017, at which Plaintiff,

1

represented by counsel, and impartial vocational expert, Robert Jackson, testified. (R. at 91-117.) ALJ Robinson issued a decision rendering Plaintiff not disabled on August 23, 2018. (R. at 12-30.) Plaintiff then requested review of the ALJ's decision with the Appeals Council for the Office of Disability and Adjudication and Review. (R. at 233.) The Appeals Council denied Plaintiff's request for review on May 31, 2019, making Defendant's decision final. (R. at 1-7.)

### B.     The Instant Action

Plaintiff sought review of Defendant's decision by filing a complaint in this Court on July 30, 2019. (Dkt. 1.) Plaintiff alleges that the Commissioner's decision was not supported by substantial evidence in the record and that her doctor's office did not send the SSA the right information. (Compl. at 3.) Defendant filed an answer on November 18, 2019. (Dkt. 9.) Defendant also filed the certified Administrative Record under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1) on that same day. (Dkt. 10.)

After the Court entered a briefing schedule on February 26, 2020 (Dkt. 12), Plaintiff filed her initial motion for summary judgment ("Pl's Motion") on April 9, 2020 (Dkt. 13).[1] The next day, April 10, 2020, Defendant filed a consent motion to extend the deadlines in this case on account of the COVID-19 pandemic. (Dkt. 14.) The Court granted the motion and on May 8, 2020, Defendant filed its cross motion for summary judgment and supporting memorandum ("Df's Mem. Supp.") (Dkts. 18, 20), its memorandum in opposition to Plaintiff's motion for summary judgment (Dkt. 21), and notice to pro se Plaintiff under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (Dkt. 19). Defendant waived oral argument on its motions. (Dkt. 22.) Plaintiff then requested two additional continuances due to the COVID-19 pandemic, which the

---

[1] Both of *pro se* Plaintiff's motion for summary judgment (Dkt. 13) and her reply (Dkt. 27) are not labeled as "motions." Rather, they are filed as notices by Plaintiff explaining her current symptoms and medications and attaching a new medical record from the University of Virginia Medical Center from February 17, 2020.

Court granted. (Dkts. 23-26.) On August 13, 2020, Plaintiff filed her reply ("Pl's Reply") and this matter became ripe for disposition. (Dkt. 27.) The parties consented to the exercise of jurisdiction by a United States magistrate judge on April 10, 2020. (Dkt. 15.)

## II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in

3

mind, the undersigned evaluates the ALJ's findings and decision.

### III.   THE ALJ'S DECISION

The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

*Step One*. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2015, the alleged onset date. (R. at 15.) Even though Plaintiff had worked after the alleged onset date, the ALJ found that her work did not rise to the level of substantial gainful activity. (*Id.*)

*Step Two*. At the second step, the ALJ found Plaintiff had the following medically determinable impairments that limit her ability to perform basic work activities: lumbar degenerative disc disease and radiculopathy, lumbosacral stenosis, epidural lipomatosis, torn Achilles tendon, fibromyalgia, obesity, chronic pain syndrome, depression, and anxiety. (R. at 15.) The ALJ also considered Plaintiff's following non-severe impairments, and found that they did not have more than a minimal effect on Plaintiff's ability to work: pulmonary embolism, coronary artery disease, non-alcoholic fatty liver disease, renal cyst, splenic cyst, cholelithiasis, adrenal hyperplasia, urinary tract infection, hypertension, hyperlipidemia, electrolyte imbalance, insomnia, and tobacco use disorder. (*Id.*)

*Step Three*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or medically equaled, the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix I. (R. at 16.) In examining Plaintiff's mental impairments, the ALJ found that Plaintiff experienced only "moderate" limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (R. at 17.) The ALJ found Plaintiff had only "mild" limitations in adapting or managing oneself. (R. at 17-18.) Additionally, the ALJ found that "the evidence does not support a finding that changes in [Plaintiff's] environment or increased demands in [her] life have led to exacerbation of symptoms and signs, leading to deterioration in functioning and resulting in an inability to function outside of her home." (R. at 19.) Accordingly, the ALJ found that Plaintiff was not disabled.

Between steps three and four, the ALJ is required to consider a claimant's residual functional capacity (RFC) pursuant to 20 C.F.R. § 416.920(e), or a claimant's ability to perform physical and mental work activities on a sustained basis, despite any limitations from impairments. Here, the ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that [Plaintiff] must alternate between sitting and standing such that she is limited to standing and/or walking for a total of four hours in an eight-hour workday; can occasionally push and pull with both lower extremities; frequently handle, finger, and feel with both upper extremities; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; can frequently balance; occasionally stoop, kneel, crouch and crawl; and can have no exposure to extreme cold or unprotected heights. Additionally, she is limited to performing simple and routine tasks; no work where the pace of productivity is dictated by an external source over which the individual has no control (such as assembly lines or conveyer belts); she cannot perform tandem tasks and can occasionally interact with the general public; and can work for two-hour intervals and then requires a five- to 10-minute break."

(R. at 20.)

*Step Four*. In analyzing the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 28.) Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff's past relevant work as a customer service lead exceeded her

5

RFC of less than a full range of light work. (*Id.*)

*Step Five*. Finally, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are a number of jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29.)

Therefore, the ALJ concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from May 9, 2015 (Plaintiff's alleged onset date) through the date of her decision (August 23, 2018). (R. at 30.) Additionally, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2020. (R. at 15.)

## IV.   ANALYSIS

Plaintiff's complaint raises only two points of error. First, without raising any particular issues, Plaintiff contends that the ALJ's decision is not supported by the substantial evidence in the record. (Compl. at 3.) Second, Plaintiff claims she is entitled to relief because her doctor's office did not send the right information to the ALJ on time. (*Id.*) As such, Plaintiff requests that this Court (1) modify Defendant's decision and grant her monthly maximum insurance benefits, retroactive to the date of her initial disability; and alternatively, (2) remand to Defendant for reconsideration of the evidence. (Compl. at 3-4.) Plaintiff's motions for summary judgment do not state any further errors but seek only to add information to Plaintiff's case. (Dkts. 13, 27.) Defendant contends that the substantial evidence on the record supports the ALJ's findings, and that the ALJ did not err in declining to consider Plaintiff's late-submitted evidence. (Df's Motion at 15-26, 27-30.) Upon review of the ALJ's decision, the Court finds that the ALJ's decision was proper for the reasons discussed below.

**A. The ALJ's Decision is Supported by Substantial Evidence in the Record**

In reviewing the record, the ALJ clearly applied the correct legal standard. As noted above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 15-28.) Accordingly, the ALJ made no clear error of law in this regard. The Court will now examine the substantial evidence in the record that supports each of the ALJ's findings.

    i.    <u>Substantial Evidence Supports the ALJ's Findings at Step 1</u>

Substantial evidence supports the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since May 9, 2015 (Plaintiff's alleged onset date). (R. at 15.) Plaintiff worked at Food Lion in 2015, but her work was part-time and she made only $4,636,23 for the year. (R. at 262, 264.) The record therefore supports the ALJ's contention that Plaintiff's work did not rise to the level of substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i).

    ii.    <u>Substantial Evidence Supports the ALJ's Findings at Step 2</u>

The substantial evidence in the record supports the ALJ's finding that Plaintiff had severe impairments of lumbar degenerative disc disease and radiculopathy, lumbosacral stenosis, epidural lipomatosis, torn Achilles tendon, fibromyalgia, obesity, chronic pain syndrome, depression, and anxiety. (R. at 15.)

At step two of the sequential evaluation process, the ALJ determines the severity of an applicant's medical impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An applicant is "disabled" if they cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423 (d)(1)(a)-(d)(2). Further, "[a]n impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R. § § 404.1521(a), 416.921(a); Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). In assessing the severity of an individual's impairments, the ALJ must consider the impact of the combination of the impairments, rather than separately assessing the contribution of each impairment alone on the individual's ability to function. 20 C.F.R. § § 404.1523, 416.923. "In the absence of contrary evidence, it is reasonable to conclude that an individual whose impairments do not preclude the performance of basic work activities is, therefore, able to perform his or her past relevant work." SSR 85-28, 1985 WL 56856, at *4 (Jan. 1, 1985).

Here, the ALJ determined Plaintiff's aforementioned impairments were severe because they significantly limited Plaintiff's ability to perform basic work activities. (R. at 15.) Similarly, the ALJ opined that Plaintiff's pulmonary embolism, coronary artery disease, non-alcoholic fatty liver disease, renal cyst, splenic cyst, cholelithiasis, adrenal hyperplasia, urinary tract infection, hypertension, hyperlipidemia, electrolyte imbalance, insomnia, and tobacco use disorder were non-severe impairments. (*Id.*) As the ALJ explained, the record indicated that these impairments had only a minimal effect on Plaintiff's ability to work. The record shows that Plaintiff's pulmonary embolism resolved with treatment and medication. (R. at 538, 700, 710.) Plaintiff's non-alcoholic fatty liver disease, along with her overall liver function, improved with weight loss. (R. at 96, 855.) Although Plaintiff experienced occasional pain from her benign cysts, her doctors were not concerned, and at her hearing, Plaintiff said her renal cyst "might kind of correct itself." (R. at 103, 733.) Further, Plaintiff did not even mention her hyperlipidemia, coronary artery disease, cholelithiasis, adrenal hyperplasia, urinary tract infection, electrolyte imbalance, insomnia, or tobacco use disorder at her hearing. (R. at 92-117.) Dr. Nancy Schmitz

reported that most of Plaintiff's lipid profiles "came back great" in November 2015 and in February 2016, noted that Plaintiff was able to control the ailment with medication. (R. at 396, 415.)

   iii.   <u>Substantial Evidence Supports the ALJ's Findings at Step 3</u>

At step three of the sequential process, an ALJ again considers the medical severity of an applicant's impairments and determines whether those impairments meet those listed in the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4)(iii). "If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). Further, a claimant's impairment matches a listing only if it meets "*all* of the specified criteria[.]" *Id.* at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

The ALJ properly considered the relevant listings and thoroughly explained her rationale for her findings. First, the ALJ found that there was no evidence in the record indicating that Plaintiff's impairment rose to the level of Listings 1.02 or 1.03, inability to ambulate and reconstructive surgery or surgical arthrodesis of a major weight-bearing joint. (R. at 16); *See* 20 C.F.R. Part 404. Subpart P, Appendix 1, § § 1.02-1.03. Regarding Listing 1.04, disorders of the spine, the ALJ acknowledged that, although Plaintiff's impairments "are severe, they do not meet the criteria" for this listing. (R. at 16); *See* 20 C.F.R. Part 404. Subpart P, Appendix 1, § 1.04. Accordingly, there is no evidence in the record that suggests Plaintiff had nerve root compression spinal arachnoiditis, or pseudoclaudication resulting in an inability to ambulate effectively. *See id.*

Next, the ALJ considered Plaintiff's obesity in conjunction with her other impairments.

(R. at 16.) As the ALJ noted, there is no specific listing for obesity, so the ALJ evaluated Plaintiff's obesity under SSR 02-1p.[2] *See* SSR, 02-1p 2002 WL 34686281 (Sept. 12, 2002). According to SSR 02-1p, "an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing" or "if there is an impairment that, in combination with obesity, meets the requirements for a listing." *Id.* at *5. But, an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments…[and ALJ] will evaluate each case based on the information in the case record." *Id.* Accordingly, the ALJ appropriately evaluated Plaintiff's obesity given the lack of evidence in the record regarding Plaintiff's obesity.

Then, the ALJ determined that Plaintiff's fibromyalgia was a medically determinable impairment but that it did not medically equal the listing. (R. at 16-17.) As fibromyalgia is not a listed impairment, an ALJ must a claimant's fibromyalgia medically equals a listing either alone or in combination with another medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012). In assessing a claimant's fibromyalgia in regard to their RFC, an ALJ "will consider a longitudinal record whenever possible." *Id.* at *6. Taking the record as a whole, the ALJ reasonably concluded that Plaintiff's fibromyalgia did not medically equal the listing.

The ALJ properly determined that Plaintiff's chronic pain syndrome did not meet or medically equal the severity of any listed impairment. (R. at 17.) Here, the ALJ stated the proper standard for this inquiry. (*Id.*) "[T]he specific findings in each case should be compared to any pertinent listing to determine whether medical equivalence may exist. Psychological

---

[2] N.B. SSR 19-2p rescinded SSR 02-1p on May 20, 2020. *See* SSR 19-2p, 2019 WL 2374255 (May 20, 2019). However, the ruling is clear that the new ruling applies only to claims "that are pending on and after the applicable date…We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at n.4. The ALJ issued the decision in this case on August 23, 2018, before the new rule. The old rules contained in SSR 02-1p therefore apply.

manifestations related to RSDS [reflex sympathetic dystrophy syndrome]/CRPS [complex regional pain syndrome] should be evaluated under the mental disorders listings, and consideration should be given as to whether the individual's impairment(s) meets or equals the severity of a mental listing." SSR 03-2p, 2003 WL 22399117 at *6 (Oct. 20, 2003). The ALJ appropriately considered this standard and reasonably concluded that Plaintiff's chronic pain syndrome did not medically equal the listing.

The ALJ then evaluated Plaintiff's mental impairments pursuant to the paragraph B criteria of 20 C.F.R. Part 404 Subpart P App. 1 §§ 12.04 and 12.06. (R. at 17.) The ALJ assessed all four paragraph B categories: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentration, persisting, or maintaining pace; and 4) adapting or managing oneself. *Id.* at 12.00F. A claimant meets this listing if their impairments result in "extreme" limitations in at least one of these categories, or "marked" limitations in at least two categories. *Id.* Ultimately, the ALJ concluded that Plaintiff had only moderate limitation in categories (1)-(3), and mild limitation in the fourth. (R. at 17-19.)

Finally, the ALJ evaluated Plaintiff's impairments under the paragraph C criteria. (R. at 19.) To satisfy paragraph C criteria, a claimant must have a "severe and persistent mental disorder," that is documented for a period of over two years, and the claimant must have sought treatment in a "highly structured setting" and achieved only "marginal adjustment" in her condition. 20 C.F.R. Part 404 Subpart P App. 1 §§ 12.04 and 12.06. The ALJ found there was no evidence in the record suggesting Plaintiff met either of these requirements, as her mental impairments improved with medicine and there was no evidence that Plaintiff was treated in the requisite highly structured setting. (R. at 19.)

In support of the above conclusions, the ALJ pointed to numerous instances in the record.

11

(R. at 18-19.) For instance, Plaintiff graduated from high school and was taking medicine for anxiety that seemed to be working. (R. at 97). Additionally, the record shows that Plaintiff was able to perform most activities of daily life. Plaintiff testified that she was able to grocery shop on her own, even though her mother drove her to doctors appointments that were farther away. (R. at 97.) Further, Plaintiff completed a class to become a personal care assistant (PCA), and even received her PCA license in 2015. (R. at 97-99.) In order to become a PCA, Plaintiff took classes for 6 hours a day, along with 30-60 minutes of related homework. (*Id.*) The classes required her to be on her feet at times and visit nursing homes. (*Id.*) However, her doctor would not clear her to do this work on account of her back condition, and the class instructor had to help Plaintiff lift patients. (R. at 99.)

The record also indicates that Plaintiff's anxiety was controlled. Plaintiff was first treated for anxiety in November 2015, after surgery. (R. at 415.) By December 2015, Plaintiff presented with a normal psychiatric affect and demeanor, and again in June and December 2016 while she was taking medication. (R. at 404, 707.) In February 2016, Plaintiff was again experiencing depression, and presented as alert but depressed and tearful. (R. at 396-99.) She admitted, however, that she had not been taking her Cymbalta regularly during this period. (R. at 398.) Plaintiff again presented with a normal mood and affect in February 2017. (R. at 753.) In May and July of 2017, however, Plaintiff reported increased stress from a romantic relationship and her fibromyalgia, which was causing chronic physical pain. (R. at 796, 799.) Still, Plaintiff was able to stay occupied by attending church and working with flowers and a number of other creative projects, although she acknowledged she had trouble pacing herself. (*Id.*) Even through this rough period, her mental status examinations indicated she was pleasant, cooperative, and dramatic with a depressed mood and appropriate affect, decreased concentration and decreased

energy. (*Id.*) Although she felt waning motivation, her insight and decision-making abilities remained fair. (*Id.*) Plaintiff also began losing weight, which improved her physical health, although she was experiencing depression in August 2017. (R. at 803.) By September 2017, however, Plaintiff again presented with a normal psychiatric profile. (R. at 875.)

    iv.    <u>Substantial Evidence Supports the ALJ's RFC</u>

Because Plaintiff's impairments did not meet a or equal a listing, the ALJ then determined Plaintiff's RFC, as discussed above. *See supra* Part III. "An individual's residual functioning capacity is the most the individual can still do despite" her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* SSR 16-3p, 2016 WL 1119029 at *11 (March 16, 2016). In determining Plaintiff's RFC, the ALJ laid out her two-step process. (R. at 20.) First, the ALJ "determined whether there is an underlying medically determinable physical or mental impairment." (*Id.*) Second, the ALJ "evaluate[d] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations." (*Id.*) Accordingly, the ALJ applied the appropriate standard for assessing Plaintiff's RFC.

In assessing Plaintiff's RFC, the ALJ thoroughly considered both Plaintiff's reported symptoms and the objective medical evidence over the span of nine pages. The ALJ considered Plaintiff's subjective hearing testimony, in which Plaintiff described, among other things, the difficulty she had performing her prior work, her ailments in her own words, and her daily living activities. (R. at 20-22.) Based on Plaintiff's testimony, the ALJ appropriately concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," although she also noted that Plaintiff's subjective reports "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the

13

substantial evidence in the record. (R. at 22.) The ALJ therefore proceeded to consider the longitudinal history contained in the record compared with Plaintiff's testimony. The ALJ ultimately concluded that the longitudinal history showed that Plaintiff's conditions were "not disabling." (*Id.*) The ALJ explained that the longitudinal record demonstrated that both Plaintiff's physical and mental conditions showed improvement with treatment and medication. (R. at 22-28.) Still, the ALJ's RFC identifies numerous limitations, acknowledging the serious, but not disabling, nature of Plaintiff's impairments. In imposing these limitations, the ALJ built "an accurate and logical bridge from the evidence to [her] conclusion," *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)), by conducting a detailed review of the record with specific citations to medical evidence. Accordingly, the Court finds that the ALJ reasonably evaluated Plaintiff's RFC based upon the substantial evidence in the record.

    v.    <u>Substantial Evidence Supports the ALJ's Findings at Step 4</u>

At step four of the sequential process, the ALJ considers the applicant's RFC and whether the applicant is able to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). In determining whether a claimant is able to perform past work, the ALJ considers whether the assessed RFC meets "the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant has performed in the past or the same kind of work as it is customarily performed throughout the economy)." SSR 82-62, 1982 WL 31386 at *3 (Jan. 1, 1982). In concluding Plaintiff is unable to perform her past relevant work, the ALJ considered the vocational expert's testimony. The vocational expert testified that a hypothetical individual with Plaintiff's impairments would not be able to alternate between sitting and standing, as required by Plaintiff's former roles as a customer service lead, cashier grocery clerk, and

machine operator. (R. at 113.) The ALJ therefore applied the correct standard and considered the appropriate evidence in the record in her step 4 findings.

    vi.    <u>Substantial Evidence Supports the ALJ's Findings at Step 5</u>

At step five of the sequential process, the ALJ considers the applicant's RFC along with the applicant's age, education, and work experience to determine whether the applicant can perform any type of work. *See* 20 C.F.R. § 404.1520(a)(4)(v). The Defendant bears the burden of providing evidence demonstrating that other work exists in significant numbers in the national economy which Plaintiff can do with her RFC. 20 C.F.R. § § 404.1560(c)(2), 416.960(c)(2). In proving such jobs exist in significant numbers in the national economy, the Defendant may use a vocational expert. 20 C.F.R. § § 404.1566(e), 416.966(e). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989) (internal citations omitted).

In this case, the ALJ posed a series of hypothetical questions to the vocational expert that detailed Plaintiff's impairments. (R. at 111-16.) In response, and consistent with the *Dictionary of Occupational Titles* (DOT), the vocational expert reported that a hypothetical person with Plaintiff's impairments would be able to work as a counter clerk (DOT 249.366-010) or mail clerk (non-postal service) (DOT 209,687-026), which have 54,000 and 14,000 jobs available nationally. (R. at 112-13.) Additionally, the vocational expert found that Plaintiff could work as an inspector grader (DOT 669.867-014), which has 48,000 jobs available nationally (R. at 114); or as a packer (DOT 731.685-014), which has 15,000 jobs available nationally (R. at 115). Accordingly, the Court finds that the ALJ reasonably relied on the vocational expert's proper

testimony in concluding that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 30.)

### B. The ALJ's Decision Not to Consider Plaintiff's Late Evidence Did Not Prejudice Plaintiff

Plaintiff's remaining reason for her appeal is that her doctor's office did not "send the right information in on time." (Compl. at 3.) Neither Plaintiff's appeal, motion for summary judgment, nor reply specify to what Plaintiff refers. This Court generally decides appeals under the Social Security Act by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09-cv-622, 2010 WL 6621693, at *7 n.7 (E.D. Va. Dec. 29, 2010) (quoting *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008)). Still, a reviewing court must "scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Id.* (internal quotations omitted). At best, this Court can guess what medical records Plaintiff believes the omittance of prejudiced her case.

According to the ALJ's opinion, Plaintiff attempted to untimely submit medical records from the University of Virginia Medical Center to the Appeals Council in May 2018. (R. at 12.) The ALJ declined to consider these untimely records pursuant to 20 C.F.R. §§ 404.935(b), 416.1435(b). These sections permit an ALJ to "decline to consider or obtain" the late evidence, except in certain enumerated circumstances. *Id.* Plaintiff does not allege any of these circumstances apply, and the Court agrees with the ALJ that these records were untimely.

Additionally, along with her motion for summary judgment, Plaintiff attached a new medical record from February 17, 2020. (Pl's Mot. at 5-6.) As Defendant points out, this Court

16

need not consider the untimely evidence the ALJ omitted, or Plaintiff's newest medical record because neither record was new or material. (Df's Mot. at 27-30.) As for the evidence Plaintiff submitted in her appeal to the appeals counsel, the ALJ need only have considered that "if the evidence is (a) new, (b) material, and (c) related to the period on or before the dare of the ALJ's decision." *Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991). In regards to the evidence Plaintiff submitted to this Court, a court may order additional evidence to be considered by defendant "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate the evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is new if it is "not duplicative or cumulative." *Wilkins*, 953 F.2d at 96. Evidence is material if it there is "a reasonable possibility that the new evidence would have changed the outcome." *Id.*

The additional records Plaintiff submitted to the Appeals Council contained records that were already contained in the record. (R. at 41-90.) Moreover, the records Plaintiff submitted to the Appeals Council were available at the time of the ALJ's hearing. These records were dated July 13, 2017 – February 21, 2018, before the ALJ's August 23, 2018 decision. (R. at 45.) Plaintiff's additional evidence therefore cannot be considered "new."

Similarly, Plaintiff's untimely evidence cannot be considered "material" because even if the ALJ had considered all of it, this evidence would not have changed the outcome of Plaintiff's case. First, much of Plaintiff's untimely evidence was considered because it had already been included in the record. (R. at 45-75 and 878-87, 796-807.) In terms of content, these records support the substantial evidence in the record indicating that Plaintiff was not disabled. These records indicate similar symptoms as those considered, but also that Plaintiff was "discharged in a stable condition with no concerning red flag signs or symptoms," and that she was to continue

her current medication regimen. (R. at 77, 80.) Accordingly, these records are not material because they would not have led to a different outcome for Plaintiff.

While the evidence Plaintiff submitted to this Court is new because it is dated after the ALJ's decision, it does not relate to the relevant time period of Plaintiff's claim, May 9, 2015 to August 23, 2018. (Pl's Mot. at 4-6.) Regardless, these records are not material. These records merely list Plaintiff's medications and impairments considered throughout the entire record and show that she is still undergoing similar treatment. (*Id.*)

Accordingly, Plaintiff has not stated a basis for remand or reversal based on the new evidence she submitted to the Appeals Council and to this Court.

## V.   CONCLUSION

Upon review of the filings and the entire record, the Court will GRANT Defendant's Motion for Summary Judgment (Dkt. 18), Deny Plaintiff's motion (Dkt. 13), and AFFIRM the final decision of Defendant. A separate order will follow.

/s/
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 29, 2020
Alexandria, Virginia